Brau Ramírez, Juez Ponente
*853 TEXTO COMPLETO DE LA SENTENCIA
I
Los apelantes Heine Rivera Serrano y José Luis Ojeda Rodríguez, solicitan la revisión de una sentencia sumaria parcial emitida el 3 de agosto de 2004 por el Tribunal de Primera Instancia, Sala Superior de Humacao, que desestimó la demanda sobre colindancia y daños y peijuicios presentada por los apelantes contra la parte apelada, la empresa de construcción Desarrolladora M.A. Corp. (“Desarrolladora”) y la Sra. María M. Abasólo, dueña de dicha empresa.
Revocamos.
II
La controversia entre las partes está relacionada a una finca propiedad de la extinta Corporación de Renovación Urbana y Vivienda (“C.R. U.V.”) ubicada en el Barrio Quebrada Arenas del municipio de Las Piedras.
De acuerdo al estudio de título presentado por los apelantes junto con su demanda, la finca en cuestión originalmente formaba parte de una finca de 61.25 cuerdas propiedad de la C.R.U.V., inscrita en el Registro de la Propiedad, Sección de Las Piedras, bajo el número 1514. Dicha propiedad fue inscrita mediante un expediente de dominio, aunque no se expresa la fecha en que ello ocurrió, ni este Tribunal ha podido determinarlo. Tampoco contamos con una descripción de la finca original.
No existe controversia, sin embargo, que la propiedad de la C.R.U.V. colindaba con una finca perteneciente a José Rivera y Emilia Sánchez, quienes eran los abuelos del apelante Heine Rivera Serrano. La finca de los abuelos del apelante nunca fue inscrita. El título sobre la misma recayó sobre la señora Sánchez, al morir el Sr. Rivera, y luego sobre el heredero de ésta, el apelante Heine Rivera Serrano.
El apelante Heine Rivera es ingeniero retirado. El apelante José Ojeda Rodríguez está emparentado con el apelante Heine Rivera. José Ojeda Rodríguez es titular de una casa erigida en el terreno del apelante Heine Rivera. 
Según la parte apelante, la finca de los apelantes estaba deslindada de la de los terrenos de la C.R.U.V. por una verja de alambre de púas. En sus escritos, los apelantes reclamaron que dicha verja permaneció en el mismo lugar por más de cuarenta años, previo a surgir la controversia entre las partes, sin que se suscitara discusión alguna sobre la correcta ubicación de los lindes de las fincas.
En el estudio de título mencionado, se menciona que la C.R.U.V. realizó posteriormente una mensura de la propiedad, la que arrojó que la finca tenía una cabida de 79.310 cuerdas, mucho mayor a la inscrita. La C.R.U.V. supuestamente intentó inscribir dicho exceso de cabida mediante un expediente de dominio adicional, pero dicha solicitud fue denegada por el Registrador porque no se había presentado la documentación necesaria.
*854 En algún momento posterior, la C.R.U.V. ordenó la confección de un plano de la propiedad {“survey plan”). El mismo fue preparado por el ingeniero Raúl Martín. El plano arroja que la propiedad de la C.R.U.V. tenía 74.9908 cuerdas. Esto es, una diferencia en cabida de más de 13 cuerdas entre la finca según mesurada y la descripción de la propiedad ofrecida en el Registro.
Durante estos trámites, los funcionarios de la C.RlU.V. visitaron la propiedad y entraron al predio, marcando los puntos. El apelante Heine Rivera relata que él apercibió a las personas que llevaban a cabo la mensura que esos no eran los puntos. El apelante alega que en esé momento se le dijo que no estaban levantando planos. Según los apelantes, previo a la controversia de autos, nunca estuvieron conscientes de que existiera un problema con las colindancias de su propiedad.
La finca núm. 1514 de 61.25 cuerdas fue objeto de la segregación de un predio de 42.7288 cuerdas, que fue inscrito bajo el número 9829. Más tarde, la finca 9829 y el remanente de la finca 1514 sufrieron otras segregaciones.
Mediante la Ley Núm. 55 de 9 de agosto de 1991, se eliminó la C.R.U.V. y se creó un organismo para la liquidación de sus cuentas conocido como la Oficina Para la Liquidación de las Cuentas de la C.R.U.V., cf., 17 L. P.R.A. see. 27 y ss. Durante el período subsiguiente, dicho organismo procedió a disponer de los bienes de la agencia.
En marzo de 1996, las fincas 9829 y 1514 fueron reagrupadas, bajo el número 12,816, por la Oficina Para la Liquidación de las Cuentas de la C.R.U.V. En ese momento, la propiedad tenía una cabida de 36.0558 cuerdas. La descripción de la finca 12,816 era la siguiente:

“RÚSTICA: Predio de terreno radicado en el Barrio Quebrada Arenas de Las Piedras, con una cabida de 36.0558 cuerdas, equivalente a 141,713.7983 metros cuadrados. En lindes por el Norte con terrenos propiedad de Saturnino Serrano, Emilia Sánchez, Dolores Morales, Pedro Ruiz y Ramón Quintana, en 8 alineaciones con una distancia de 673.8734 metros lineales, por el Sur, con terrenos propiedad de José Rosado Medina, Mario Rabelo Estate y Margaro López, en once alineaciones con una distancia de 484.7832 metros lineales; por el Este con terrenos propiedad de Margaro López Cruz, Felipa Martínez Medina, Luz María Rivera, Josefa Rivera, Salvador Vázquez y C. Brewer Co., en 18 alineaciones con una distancia de 916.9815 metros lineales y por el Oeste con terrenos propiedad de José Rosado Medina, Teresa Rivera y Antonio Torres Estate en seis alineaciones con una distancia de 577.3618 metros lineales. Se forma por agrupación de las fincas colindantes entre sí, finca 9829, ..., reducida su cabida a 95,724.0043 metros cuadrados y la# 1514, ..., reducida su cabida a 45,989.795 metros cuadrados. ”

En o para la misma época, la Oficina Para la Liquidación de Cuentas de la C.R.U.V. segregó de la anterior, la finca objeto de la presente controversia, la que fue inscrita bajo el número 12,878. La propiedad tiene la siguiente descripción registral:

“URBANA: Predio de terreno radicado en el Barrio Quebrada Arenas de Las Piedras, conocido como Area III; con una cabida superficial de 9.3732 cuerdas, equivalentes a 36,840.19 metros cuadrados. En lindes, por el Norte, con el Area I en cinco (5) alineaciones, con uná distancia de 178.5879 metros lineales; por el Sur con un área construida del proyecto y el Area IV en Veinte (20) alineaciones con una distancia de 411.0285 metros lineales; por el Este con el área de uso público, Centro Cultural, Area de Escuela y el Area I en cinco (5) alineaciones, con una distancia de 180.7910 metros lineales y por el Oeste, con terrenos propiedad de Emilia Sánchez y Saturnino Serrano en dos (2) alineaciones con una, distancia de 131.7871 metros lineales. ... Es segregación de la finca 12,816. ”

El 28 de marzo de 1996, la propiedad fue vendida por la Oficina Para la Liquidación de Cuentas de la *855 C.R.U.V. a la corporación Las Piedras Affordable Housing Corporation (“Affordable”), mediante la Escritura Núm. 4 otorgada en San Juan, ante en notario público Oscar García Palacios. La transacción fue inscrita en el Registro.
Al momento de Affordable adquirir la propiedad, se proyectaba el desarrollo en la misma de un proyecto de vivienda de interés social a llamarse Urbanización Jardines de Oriente. Affordable, sin embargo, confrontó dificultades económicas y no pudo completar el proyecto.
El 3 de abril de 1998, la propiedad fue adquirida por la apelada Desarrolladora, en concepto de dación en pago por una deuda de Affordable, mediante la Escritura Núm. 5 otorgada en San Juan, ante el notario público Antonio Rodríguez Fraticelli. Desarrolladora se dispuso a construir el proyecto contemplado y completó los trámites gubernamentales para el mismo.
Como parte de estos trámites, poco después de la adquisición de la propiedad por Desarrolladora, la firma de agrimensores Gómez, Rodríguez & Assoc, procedió a llevar a cabo una mensura de la propiedad de Desarrolladora. El plano preparado, que tenía fecha del 26 de julio de 1998, reflejaba que en la colindancia con la propiedad de la Sucesión de Emilia Sánchez, i.e., la finca de los apelantes, existía un “área en controversia".
Al adquirir la propiedad, Desarrolladorá descubrió que los linderos de la finca que había adquirido incluían una porción del terreno que estaba bajo la posesión de los apelantes. En el área en cuestión de la propiedad se había programado la construcción de ocho viviendas. Aparentemente, al comenzar los trabajos de la urbanización, Desarrolladora entró en controversia con el apelante José Ojeda Rodríguez y con el padre de éste, José Ojeda. Dicho apelante, según hemos visto, había edificado una casa en los terrenos de la finca de Emilia Sánchez, la que quedaba cerca del área de la construcción.
El 19 de enero de 1999, la apelada María Abasólo presentó una querella sobre colindancia en contra del apelante Ojeda Rodríguez y el padre de éste, ante la Sala Municipal de Las Piedras del Tribunal de Primera Instancia, al amparo de la Ley Sobre Controversias y Estados Provisionales de Derecho, 32 L.P.R.A. sees. 2871 y ss. En su querella, la apelada alegó que el apelante había movido su verja hacia dentro de la propiedad de Desarrolladora, afectando el proceso de construcción. La parte apelada compareció al Tribunal acompañada de sus peritos, quienes señalaron que, de acuerdo al plano que poseían de la C.R.U.V., la verja de los apelantes estaba dentro de la propiedad de Desarrolladora.
El apelante compareció y alegó que la verja siempre había estado en el mismo lugar.
Luego de otros trámites, el padre del apelante contrató un agrimensor. A éste le fue mostrado el plano existente de la C.R.U.Y., y verificó, junto a los peritos de Desarrolladora, la mensura realizada por éstos. El perito del apelante concluyó que, a base del plano, el procedimiento había sido correcto. Ante esto, el apelante acordó remover su verja.
El 18 de marzo de 1999, el Tribunal ordenó el archivo de la querella. El apelante Heine Rivera no fue parte en este procedimiento, el cual no tuvo el efecto de adjudicar finalmente la cuestión. 32 L.P.R.A. see. 2875.
Poco después, Desarrolladora comenzó la construcción de las residencias en el área en cuestión. Los terrenos de la urbanización quedaban más bajos que los de la propiedad de los apelantes. Como parte de los trabajos, Desarrolladora procedió a efectuar un corte de 90 grados en los terrenos para crear un talud, con un muro de contención. Dicho corte fue realizado muy cerca de la casa del apelante José Ojeda Rodríguez, creando una barranca de varios pies junto a su casa. Los apelantes alegan que el muro de constmcción fue defectuosamente realizado y que el mismo cedió posteriormente, creando el peligro de deslizamiento en la propiedad del apelante.
*856 El 29 de noviembre de 1999, los apelantes instaron la presente acción sobre entredicho provisional, injunction permanente y daños y perjuicios contra Desarrolladora y la Sra. Abasólo ante el Tribunal de Primera Instancia, Sala Superior de Humacao.
En su demanda, los apelantes alegaron que la constmcción de las 8 casas en el área en controversia era ilegal, por pertenecer la propiedad a los apelantes y porque la constmcción había sido llevada a cabo de forma contraria a los permisos gubernamentales expedidos para la misma. Solicitaron que se ordenara la paralización de la terminación y entrega de las viviendas y que se compensara a los apelantes por los daños sufridos por ellos.
La parte apelada contestó la demanda, negando las alegaciones y levantando varias defensas afirmativas. Entre otras cosas, los apelados alegaron que la constmcción se había llevado a cabo dentro de los linderos de la propiedad de la C.R.U.V. adquirida por Desarrolladora.
Luego de otros incidentes, incluyendo un recurso ante este Tribunal, KLCE-2000-00095, el 26 de julio de 2000, los apelantes presentaron una moción de sentencia sumaria parcial sobre deslinde y reivindicación.
En su moción, los apelantes señalaron que la propiedad original de la C.R.U.V., finca 1514, había sido inscrita con una cabida de 61.25 cuerdas, lo que contradecía el “survey plan” de la propiedad, preparado por el ingeniero Raúl Martín, que expresaba que la propiedad tenía 74.9908 cuerdas. Los apelantes insistieron en que la propiedad objeto de la constmcción formaba parte de su finca y solicitaron la reivindicación de la misma. Los apelantes expresaron, además, que Desarrolladora no podía ser considerada un tercero registral porque no existía tracto en la cabida del inmueble adquirido por ellos.
Los apelados se opusieron a la moción de los apelantes. Alegaron que no existía defecto alguno en su título. Señalaron, además, que las residencias habían sido entregadas a las personas que las habían adquirido, quienes resultaban ser partes indispensables para la adjudicación del procedimiento.
Junto con su oposición, los apelados formularon una solicitud de sentencia sumaria, suplicando al Tribunal, que determinase que los apelados eran, precisamente, terceros regístrales de buena fe, a la luz del art. 105 de la Ley Hipotecaria, 30 L.P.R.A. see. 2355, por lo que su título sobre la franja objeto de la controversia no podía ser cuestionado por los apelantes.
El 1ro de septiembre de 2000, los apelados insistieron nuevamente en su solicitud de que el Tribunal determinase sumariamente que los apelados constituían terceros regístrales, bajo el art. 105 de la Ley Hipotecaria, 30 L.P.R.A. see. 2355. El Tribunal de Primera Instancia no acogió dicho planteamiento.
Luego de otros trámites, incluyendo otro recurso ante este Tribunal, KLCE-2001-01268, el 24 de mayo de 2004, los apelantes enmendaron su demanda para incluir como partes demandadas al Estado Libre Asociado de Puerto Rico y a la C.R.U.V.
En su demanda enmendada, los apelantes también expresaron que la propiedad objeto de los trabajos llevados a cabo por Desarrolladora les pertenecía y que las actuaciones de los apelados les había ocasionado daños. Los apelantes alegaron que “la parte demandada tenía pleno conocimiento, tanto de hecho como de derecho, a través de planos, permisos, reglamentación y notificaciones, de que habría problemas con su colindancia del lado Oeste con la finca de Emilia Sánchez, y además, que no podía hacer un corte o talud de aproximadamente 90° como lo hizo, en clara violación a los reglamentos de construcción vigentes, causando daños y desmerecimiento a los propietarios que tienen su residencia con dicha colindancia (Emilia Sánchez). ”
Los apelantes insistieron en que los apelados no podían ser considerados como un tercero registral.
Los apelados se opusieron.
*857 En o cerca de este momento, la apelada María Abasólo presentó una moción de sentencia sumaria parcial, solicitando ser excluida de los procedimientos. El Tribunal de Primera Instancia declaró con lugar esta solicitud. Este dictamen fue revocado por este Tribunal mediante sentencia emitida el 28 de agosto de 2001, en el caso KLCE-2001-00903.
Luego de otros trámites adicionales, en o cerca del 27 de marzo de 2002, los apelados presentaron una nueva moción de sentencia sumaria parcial, en la que volvieron a alegar que eran terceros regístrales bajo el Art. 105 de la Ley Hipotecaria, 30 L.P.R.A. see. 2355. Los apelantes se opusieron, alegando que existía controversia sobre este punto y que la solicitud de los apelados ya había sido denegada por el Tribunal.
Mediante resolución emitida el 27 de septiembre de 2002, el Tribunal de Primera Instancia denegó la moción de los apelados. Los apelados recurrieron a este Tribunal, mediante el recurso KLCE-2002-01184. Mediante resolución emitida el 22 de enero de 2003, este Tribunal devolvió el asunto al Tribunal de Primera Instancia para que procediera a fundamentar su dictamen.
La distinguida Sala recurrida cumplió con el mandato de este Tribunal, emitiendo una nueva resolución el 3 de marzo de 2003, en la que exponía los fundamentos para denegar la moción de sentencia sumaria de los apelados.
Los apelados recurrieron nuevamente ante este Tribunal mediante el recurso KLCE-2003-00463.
Mediante resolución emitida el 15 de mayo de 2003, este Tribunal declinó acoger el recurso presentado.
En la resolución emitida en dicha ocasión, este Tribunal concluyó que la parte apelada cumplía con varios de los requisitos establecidos por el Art. 105 de la Ley Hipotecaria para ser considerado un tercero registral. La resolución de este Tribunal expresaba, en este sentido:

“[N]o cabe duda de que [la parte apelada] adquirió un derecho real inmobiliario inscrito de persona que en el Registro de la Propiedad aparece con facultades para transmitirlo. En cuanto a los otros criterios no existe controversia de que fue un negocio intervivos, a título oneroso y cuya validez no ha sido cuestionada. Además, la inscripción posterior que de las fincas hiciera el Registrador, provocó que en el Registro de la Propiedad no constara clara y expresamente las causas de la inexactitud registral alegada por los [apelantes]. ”

Ahora bien, la discusión que antecede no está completa, ya que falta por discutir el elemento de la buena fe...
Si el Tribunal recurrido resuelve la presente controversia mediante el mecanismo de sentencia sumaria se privará de poder considerar aspectos centrales de la controversia que ameritan ser discutidos en una vista plenaria ...
Al ser el planteamiento de buena fe uno de suma importancia en la determinación de si Desarrolladora es o no tercero registral, y ante la complejidad del tracto registral, esta controversia debe ser dirimida por el Tribunal de Instancia en una vista en su fondo, ya que no puede ser sostenido por los documentos en el expediente y por lo mismo no debe resolverse este extremo mediante el uso de la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. m, R. 36.
El Tribunal denegó el recurso de los apelados.
Posteriormente, el 20 de abril de 2004, los apelados presentaron una vez más una solicitud de sentencia sumaria parcial, basada en el fundamento de que eran terceros regístrales. En su moción, los apelantes alegaron que este Tribunal había resuelto en el recurso KLCE-2003-00463 que los apelados cumplían con los demás *858 requisitos para ser considerados terceros registrars y que el único punto en controversia es si gozaban de buena fe. Los apelados acompañaron deposiciones tomadas a los apelantes Heine Rivera y José Luis Ojeda, en la que éstos declararon que, previo a los hechos del caso, nunca había surgido controversia sobre los linderos de la propiedad. Los apelados alegaron que ello era indicativo de que los apelados habían sido adquirentes de buena fe y que no conocían de defecto alguno en su título sobre la propiedad.
Los apelantes se opusieron a la moción de los apelados señalando que existía controversia sobre la buena fe de los apelados, ya que el “survey plan” de la propiedad adquirida por ellos reflejaba que la cabida del predio era de 74.9908 cuerdas, cuando la finca original había sido inscrita con una cabida de 61.25 cuerdas.
Luego de otros trámites, el 3 de agosto de 2004, mediante la sentencia parcial apelada, el Tribunal de Primera Instancia declaró con lugar la moción de sentencia sumaria de los apelados y ordenó la desestimación de la demanda contra éstos.
En su sentencia, el Tribunal de Primera Instancia consideró que este Tribunal había entendido, en la resolución emitida el 15 de mayo de 2003 en el recurso KLCE-2003-00463, que los apelados cumplían con los requisitos establecidos por el Art. 105 de la Ley Hipotecaria para ser considerados terceros de buena fe y que la controversia se reducía más bien a determinar si los apelados gozaban de buena fe en la transacción. El Tribunal concluyó que dicho asunto quedaba esclarecido mediante las deposiciones tomadas a los apelantes, las que reflejaban que previo a la compraventa de la propiedad, no se había suscitado controversia sobre la colindancia de las propiedades. El Tribunal expresó:

“[QJuedó demostrado de la decisión del Honorable Tribunal Apelativo deforma clara e inequívoca, que la parte demandada reunía los requisitos y/o condiciones de protección exigidos del Artículo 105 de la Ley Hipotecaria, 30 L.P.R.A. see. 2355, en cuanto a recibir el inmueble a título oneroso y de quien figure a su nombre inscrito el mismo. Lo único que no aparecía claro y/o se desprendía hasta ese momento era el aspecto de la buena fe que también es requisito conforme al referido Artículo 105 para tener la protección reclamada.

... [R]esulta[] luego al tomársele las respectivas deposiciones a ambos demandantes (Heine Rivera como José Luis Ojeda el pasado 2 de febrero de 2004) que nadie, incluyendo a los propios demandantes como a los demandados, conocían antes de la compraventa del inmueble por los demandados sobre la falta de cabida y/o inexactitudes y/o defectos sobre la misma, y en su consecuencia también, e inexorablemente no había entonces mala fe por parte de los demandados, sino y por el contrarío [se presume] también la buena fe de acuerdo al referido Artículo 105 de la Ley Hipotecaria;... ”.

El Tribunal procedió a desestimar en su totalidad la demanda contra los apelados, incluyendo la demanda por daños y perjuicios por los cortes de los taludes.
La sentencia del Tribunal de Primera Instancia fue archivada en autos y notificada el 6 de agosto de 2004.
Oportunamente, el 16 de agosto de 2004, la parte apelante solicitó reconsideración del dictamen del Tribunal de Primera Instancia, así como determinaciones de hechos adicionales. El 19 de agosto de 2004, la moción de los apelantes fue acogida por otro Juez y referida al magistrado que había emitido la sentencia sumaria parcial, el que se encontraba de vacaciones. 
El 14 de septiembre de 2004, el Tribunal denegó la moción de reconsideración y solicitud de determinaciones adicionales de los apelantes.
Inconforme, dicha parte acudió ante este Tribunal.
*859 III
En su recurso, los apelantes plantean que el Tribunal de Primera Instancia erró al ordenar la desestimación sumaria de su reclamación contra los apelantes.
La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.2, según se conoce, permite a una parte presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. Vera et al. v. Dr. Bravo et als., 161 D.P.R. _ (2004), 2004 J.T.S. 40, a la pág. 744; P.A.C. v. E.L.A. I, 150 D.P.R. 359, 374 (2000); Piñero v. A.A.A., 146 D.P.R. 890, 904 (1998); Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 526 (1998).
La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3, por su parte, autoriza al tribunal a dictar sentencia sumaria cuando "no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente". Véase, en general, P.A.C. v. E.L.A. I, 150 D.P.R. a la pág. 374; Soto v. Rivera, 144 D.P.R. 500, 518 (1997); Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).
El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo proqesal contribuye a descongestionar los calendarios judiciales. P.A.C. v. E.L.A. I, 150 D.P.R. a la pág. 374; López v. J. Gus Lallande, 144 D.P.R. 774, 783 (1998); Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 869 (1995).
El Tribunal Supremo de Puerto Rico ha advertido, sin embargo, que la sentencia sumaria sólo procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaría. Rivera v. Depto. de Hacienda, 149 D.P.R. 141, 154-155 (1999); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785, 802 (1993).
Si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaría. Véanse, S.L.G. v. S.L.G., 150 D.P.R. 171, 193 (2000); Rivera v. Depto. de Hacienda, 149 D.P.R. a la pág. 158; Bonilla Medina v. P.N.P., 140 D.P.R. 294, 304 (1996); Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115, 133 (1992).
La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 914 (1994).
Al hacer su evaluación, el Tribunal debe considerar la totalidad de las alegaciones y documentos que obren en el récord, los cuales se toman de la manera más favorable a la parte promovida. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. a la pág. 913; Corp. Presiding Bishop of LDS v. Purcell, 117 D.P.R. a las págs. 721-723; Flores v. Municipio de Caguas, 114 D.P.R. 521, 525 (1983); Padín v. Rossi, 100 D.P.R. 259, 263-264 (1971).
El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales recae sobre la parte que solicita la sentencia sumaria. Vera et al. v. Dr. Bravo et als., 2004 J.T.S. 40, a la pág. 745; Soto v. Rivera, 144 D.P.R. a la pág. 518; Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994).
El sólo hecho de no presentar evidencia que contravierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria. Jusino et als. v. Walgreens, 155 D.P.R. _ (2001), 2001 J.T.S. 154, a la pág. 373; PFZ Props, Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. a la pág. 913. Tiene que haber quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas. Asoc. Pese. Pta. Figueras v. Pto. del Rey, 155 D.P.R. _ (2002), 2002 J.T.S. 4, a la pág. 583; García Rivera et al. v. Enriquez, 153 D.P.R. _ (2001), 2001 J.T.S. 15, a la pág. 820.
*860 La moción debe ser evaluada de la forma más favorable a la parte que se opone a la solicitud de sentencia sumaria y toda inferencia que se haga a base de los hechos y documentos presentados, debe ser interpretada de manera favorable a dicha parte. Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. _( 2000), 2000 J.T.S. 189, a las págs. 440-441.
Al dictar una sentencia sumaria, el Tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El Tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. a la pág. 913.
El Tribunal Supremo de Puerto Rico ha observado que existen ciertos tipos de litigios y controversias que, por su naturaleza, resultan inapropiados para ser adjudicados por la vía sumaria. Entre éstos se encuentran las controversias que envuelven elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. Vera et al. v. Dr. Bravo et als., 2004 J.T.S. 40, a la pág. 745; Rosario v. Nationwide Mutual, 158 D.P.R. _ (2003), 2003 J.T.S. 34, a las págs. 641-642; Jusino et als. v. Walgreens, 2001 J.T.S. 154, a la pág. 374; G.G. & Supp. Corp. v. S. & F. Systs., Inc., 153 D.P.R. _ (2001), 2001 J.T.S. 57, a la pág. 1,142; Rivera v. Depto. de Hacienda, 149 D.P.R. a la pág. 152; Piñero v. A.A.A., 146 D.P.R. a la pág. 904; Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452, 469 (1996); Soto v. Hotel Caribe Hilton, 137 D.P. R. 294, 301 (1994); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. a la pág. 914; Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. a las págs. 722-723.
Debe recordarse que el procedimiento de sentencia sumaria no permite que el Tribunal dirima cuestiones de credibilidad. Vera et al. v. Dr. Bravo et als., 2004 J.T.S. 40, a la pág. 745. Tampoco debe desestimarse sumariamente una demanda sin brindar a la parte demandante una oportunidad adecuada de concluir su descubrimiento y de refutar la moción de sentencia sumaria. García Rivera et al. v. Enríquez, 2001 J.T.S. 15, a la pág. 820; Pérez v. El Vocero de P.R., 149 D.P.R. 427, 447 (1999); Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716, 733 (1994).
En el caso de autos, se trata de una demanda de deslinde, reivindicación y daños y perjuicios presentada por los apelantes contra la parte apelada. De su faz, la decisión apelada del Tribunal de Primera Instancia resulta incorrecta, puesto que la Sala apelada ordenó la desestimación de la totalidad de la demanda de los apelantes contra los apelados. Esto incluyó la reclamación de los apelantes de que Desarrolladora les ocasionó daños al realizar cortes de taludes durante la construcción,’ los que fueron llevados a cabo de forma ilegal o negligente, perjudicando la propiedad de los apelantes, que quedaba cerca de dichos trabajos y que se vio menoscabada por los mismos.
Esta porción de la reclamación de los apelantes no está relacionada al título de la propiedad de los apelados, sino a si éstos incumplieron su deber de cuidado en la realización de los trabajos de construcción llevados a cabo. Hasta donde hemos podido detectar, no existe fundamento para desestimar esta parte de la reclamación de los apelantes, en esta etapa.
Los apelantes, según hemos visto, también han reclamado que los trabajos de construcción fueron llevados a cabo dentro de los linderos de su propiedad y han expresado su deseo de reivindicar su propiedad.
Nuestro examen del presente recurso y de los recursos anteriores presentados ante este Tribunal relacionados a la presente controversia reflejan un grado de confusión procesal en tomo a este planteamiento.
*861 Es evidente, en este sentido, que cualquier adjudicación de los derechos dominicales relacionados a la colindancia entre los terrenos de la finca de Emilia Sánchez y aquéllos de la propiedad de la C.R.U.V. requiere la inclusión en el procedimiento, de los titulares de las propiedades envueltas. La parte apelada ha señalado que las ocho propiedades construidas en el área en controversia fueron entregadas a sus titulares. Como titulares de las propiedades, estas personas quedarían afectadas por cualquier dictamen relacionado a la fijación de la colindancia entre los predios y/o la reivindicación de los terrenos.
Se trata, por lo tanto, de partes indispensables para la concesión de los remedios solicitados, conforme a la Regla 16.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.1. Deliz et als. v. Igartúa et als., 158 D.P.R. _ (2003), 2003 J.T.S. 7, a la pág. 432; Sánchez v. Sánchez, 154 D.P.R. _ (2001), 2001 J.T.S. 112, a la pág. 1573; Mun. de Ponce v. A.C. et al., 153 D.P.R. _ (2001), 2001 J.T.S. 3, a la pág. 653; Fred y Otros v. E.L.A., 150 D.P.R. 599, 608-609 (2000); Rodríguez Rodríguez v. Moreno Rodríguez, 135 D.P.R. 623, 627 (1994); Torres v. Alcalde Mun. de Carolina, 135 D.P.R. 108, 121 (1994); Cepeda Torres v. García Ortiz, 132 D.P.R. 698, 704 (1993); Granados v. Rodríguez Estrada II, 124 D.P.R. 593, 603 (1989); Hernández Agosto v. López Nieves, 114 D.P.R. 601, 604-608 (1983); Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 412-413 (1982).
En el presente caso, el Tribunal de Primera Instancia no podría conceder a los apelantes los remedios de deslinde y reivindicación solicitados por ellos, sin la inclusión en el pleito de los titulares de las propiedades colindantes. Tampoco surge que el apelante Héine Rivera, quien alega haber adquirido la propiedad por herencia, hubiera acreditado de manera adecuada que goza de un título único sobre los terrenos de Emilia Sánchez. En ausencia de dicha acreditación, los otros herederos de la titular original de la propiedad también resultarían ser partes indispensables en la controversia. Véanse, Danz v. Suau, 82 D.P.R. a la pág. 614; Fuentes v. Tribl. de Distrito, 73 D.P.R. a la pág. 987.
La ausencia de una parte indispensable, según se conoce, puede ser levantada en cualquier momento, incluso en apelación, o sua sponte por el Tribunal. Deliz et als. v. Igartúa et als., 2003 J.T.S. 7, a la pág. 433; Martínez Soria v. Tribunal Superior, 139 D.P.R. 257, 263 (1995); Hernández Agosto v. López Nieves, 114 D.P.R. a la pág. 603.
Lo anterior, sin embargo, no requiere la desestimación de la demanda de los apelantes. El Tribunal Supremo de Puerto Rico ha advertido que una reclamación no debe ser desestimada de su faz, cuando la misma puede ser enmendada para corregir cualquier defecto en las alegaciones. Sólo cuando se desprenda de las alegaciones que la parte demandante no tendría derecho a remedio alguno bajo cualesquiera hechos que puedan ser probados, es que cabe desestimar sumariamente una reclamación. Roldán v. Lutrón, S.M., Inc., 151 D.P.R. _ (2000), 2000 J.T.S. 133, a la pág. 27; Dorante v. Wrangler of P.R., 145 D.P.R. 408, 414 (1998); Agosto v. Mun. de Río Grande, 143 D.P.R. 174, 178 (1997); Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497, 505 (1994); Granados v. Rodríguez Estrada I, 124 D.P.R. 1, 48 (1989); Clemente v. Depto. de la Vivienda, 114 D.P.R. 763, 771 (1983).
En el presente caso, la falta de parte indispensable podría ser subsanada mediante la enmienda a la demanda para incluir a los nuevos titulares de los terrenos ubicados en la colindancia.
La controversia, en este sentido, gira primariamente sobre la correcta ubicación de la colindancia entre la propiedad de los apelantes y la finca adquirida por Desarrolladora de la C.R.U.V. Los apelantes han alegado que la finca de ellos estuvo demarcada de los terrenos de la C.R.U.V. por una verja de alambre de púas, la que llevaba más de 40 años en el mismo sitio. Dicha verja fue voluntariamente removida por los apelantes como producto de la querella instada por Desarrolladora contra el apelante José L. Ojeda Rodríguez ante la Sala Municipal de Las Piedras en enero de 1999, pero, según hemos observado, este tipo de adjudicación no goza de la naturaleza de cosa juzgada. 32 L.P.R.A. see. 2876.
Hasta donde este Tribunal ha podido colegir de los distintos escritos y recursos presentados por las partes, en *862 el presente caso existe controversia sobre los lindes de las respectivas propiedades. Dicha controversia debe ser adjudicada con anterioridad a considerar la validez del título de los apelados sobre la finca adquirida por Desarrolladora.
La validez del título de los apelados resulta ser un asunto impertinente a la presente demanda si el Tribunal de Primera Instancia concluye que el área de la construcción no formaba parte de la finca adquirida por Desarrolladora y que los puntos fijados por los agrimensores de la C.R.U.V. fueron incorrectamente identificados, según alegan los apelantes.
Debe recordarse que, precisamente, el Registro de la Propiedad no confiere ni quita derechos a las partes, sino que su función es la de meramente dar publicidad a los, títulos sobre los tierras. 30 L.P.R.A. see. 2355.
Según ha observado el Tribunal Supremo de Puerto Rico: “salvo un derecho hipotecario, la inscripción es sólo declarativa, y no es fuente de derechos, ni modo de adquirirlos, sino de garantizar los existentes legalmente, que no arranca el vicio o error al acto, o'contrato que la causó, ni suple al título ni da fuerza a lo que no la tiene ni vida a lo que nació sin ella.” Goenaga v. O’Neill de Milán, 85 D.P.R. 170, 205 (1962); véase, además, Luis Rafael Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da edición, Jurídica Editores, San Juan, 2002, a las págs. 42-44.
En el presente caso, los apelantes han cuestionado la corrección de los planos levantados por la C.R.U.V., sobre la base de los cuales Desarrolladora procedió a identificar y deslindar la finca que había adquirido de dicha parte y a realizar la construcción del proyecto. Los apelantes alegan que la verja de púas que delimitaba las propiedades había estado en el mismo lugar por más de 40 años, lo que, de resultar cierto, implicaría que los apelantes gozan de título sobre la franja en cuestión, ya bien por haber formado parte de los terrenos de la finca de Emilia Sánchez, o por haberlo adquirido por usucapión.
Se trata, por lo tanto, en primera instancia, de un problema de colindancia, 31 L.P.R.A. sees. 1211 y ss., sobre el cual existe una evidente controversia de hecho entre las partes. Sólo si se concluye que la franja donde se llevó a cabo la construcción pertenece y forma parte de la finca adquirida por Desarrolladora de la C.R.U.V. es que cabe considerar si cualquier defecto que pudiera haber existido en el título de Desarrolladora quedó subsanado por el Registro.
El Tribunal de Primera Instancia aparentemente fue movido a considerar esta cuestión en este caso debido a las alegaciones de los apelantes de que los apelados no eran un tercero registral. Ello, según hemos visto, motivó que los apelados insistieran en que desconocían de defecto alguno en su título y que solicitaran al Tribunal que emitiera sentencia sumaria desestimando la demanda en su contra por este fundamento.
El Art. 105 de la Ley Hipotecaria dispone, en lo pertinente:

“A pesar de que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos, el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara u expresamente del propio Registro, o que existan sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos. ”

30 L.P.R.A. see. 2355.
En su resolución emitida el 15 de mayo de 2003 en el caso KLCE-2003-00463, este Tribunal consideró que *863 los apelados cumplían con los otros requisitos impuestos por dicho precepto, pero que existía controversia real sustancial en tomo a si los apelados habían obrado de buena fe, lo que impedía que el Tribunal de Primera Instancia emitiera sentencia sumariamente en este caso.
La determinación de este Tribunal, desde luego, no era necesariamente vinculante, por no haberse emitido el auto de certiorari. Véase, Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 756 (1992) (“una resolución de este Tribunal declarando ‘no ha lugar’ a un recurso de certiorari no resuelve implícitamente cuestión alguna contra el peticionario a los efectos de cosa juzgada. La resolución denegatoria simplemente es índice de la facultad discrecional de este Tribunal para negarse a revisar, en determinado momento, una decisión emitida por un Tribunal de Primera Instancia”); Bartolomei v. Tribl. Superior, 11 D.P.R. 462, 463 (1954); véase, además, Hiram A. Sánchez Martínez, Derecho Procesal Apelativo, Lexis-Nexis of Puerto Rico, Inc., 2001, a la pág. 387.
No pensamos, sin embargo, que el foro apelado hubiera errado al admitir el análisis expresado por este Tribunal, el cual es evidentemente razonable.
El Tribunal de Primera Instancia concluyó que los apelados habían obrado de buena fe, porque los apelantes habían declarado en su deposición que previo a los hechos del caso, no habían surgido controversias sobre la colindancia entre las dos fincas.
El punto no es, sin embargo, si los apelantes tuvieron conocimiento de que los apelados reclamaban la propiedad, sino si los apelados conocían que los apelantes reclamaban título sobre el predio. La versión de los apelantes, según hemos visto, es que la verja de púas que delimitaba los dos predios y que fue removida en la querella presentada ante el Tribunal Municipal de Las Piedras a comienzo de 1999, había permanecido en el mismo lugar por más de 40 años.
Existe, creemos, controversia entre las partes sobre este asunto.
Los apelantes señalan que la finca original de la C.R.U.V., la propiedad inscrita bajo el número 1514, tenía una cabida de tan sólo 61.25 cuerdas. No obstante lo anterior, el “survey plan” preparado posteriormente por la C.R.U.V. arroja una cabida distinta a la informada en el Registro, de 74.9908 cuerdas.
Los apelantes también presentaron ante el Tribunal de Primera Instancia un'plano preparado por la firma de Agrimensores Gómez, Rodríguez & Assoc., el que refleja que el área de la colindancia entre las dos fincas era un “área en controversia”. Aunque este plano tiene fecha del 26 de julio de 1998, varios meses después de la adquisición de la propiedad por Desarrolladora, el mismo permite la inferencia de que la información sobre la controversia pudo haber sido brindada por los oficiales de la C.R.U.V. y que la parte apelada pudo haber tenido conocimiento de lo anterior.
En resumen, tal y como observara este Tribunal en su resolución emitida el 15 de mayo de 2003 en el caso KLCE-2003-00463, en el presente caso existe una controversia real sustancial de hecho entre las partes sobre si la parte apelada tenía conocimiento de qué la propiedad adquirida por Desarrolladora de la C.R.U.V. podía haber incluido porciones de terrenos pertenecientes a la finca de Emilia Sánchez. También existe controversia en tomo a si la diferencia alegada en la cabida de la propiedad de Desarrolladora surge del Registro.
En estas circunstancias, consideramos que el Tribunal de Primera Instancia erró al emitir sentencia sumaria en el presente caso. Véase, Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 559-560 (1991); Roig. Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 618 (1990); véanse, además, Banco de Santander v. Rosario Cirino, 126 D.P.R. 591, 605-606 (1990); Pascual v. Fernández Sierra, 108 D.P.R. 426, 434-435 (1979); Jordán-Rojas v. Padró-González, 103 D.P.R. 813, 819-820 (1975); Sánchez v. Colón, 97 D.P.R. 493, *864 497 (1969); Mundo v. Fuster, 87 D.P.R. 363, 376-377 (1963).
Cabe observar que el Tribunal Supremo de Puerto Rico ha expresado que el principio de buena fe implica un grado mínimo de diligencia por parte del adquirente, quien viene obligado a realizar aquellas gestiones pertinentes para detectar cualquier anomalía en el trámite. Banco de Santander v. Rosario Cirino, 126 D.P.R. a la pág. 612.
En el presente caso, existe, cuando menos, controversia real sustancial en tomo a si el área de la construcción pertenece a los apelantes y si la parte apelada conocía o debía razonablemente conocer de lo anterior. Procede revocar la sentencia apelada.
Por los fundamentos expresados, se revoca la sentencia apelada. Se devuelve el caso al Tribunal de Primera Instancia para procedimientos consistentes con este dictamen. Dicho Tribunal deberá atender los señalamientos realizados en esta sentencia, incluyendo nuestras observaciones sobre la posible ausencia de partes indispensables en este litigio.
Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Aida Ileana Oquendo Graulau
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 24
1. Hemos tomado conocimiento de los recursos anteriores presentados ante este Tribunal relacionados a la controversia de autos, así como de los documentos incluidos en los mismos, obrantes en los autos ante el Tribunal de Primera Instancia.
2. En su deposición, el apelante Heine Rivera Serrano declaró que él era el único dueño de la propiedad. No está claro, sin embargo, de los documentos ante este Tribunal, si el apelante Heine Rivera efectivamente es el único heredero y/o adquiriente de la propiedad, o si existen otros herederos de la Sra. Emilia Sánchez que pudieran tener interés en el predio.
En su deposición, el apelante mencionó que en la propiedad existen cuatro casas de primos suyos, hijos de la hermana del papá del apelante, que permanecieron viviendo en la propiedad. El apelante José Ojeda Rodríguez es el titular de una de estas propiedades.
No podemos precisar, si los otros titulares de casas en los terrenos que pertenecían a Emilia Sánchez tienen título de dominio sobre los terrenos o alguna porción de éstos, o si existen otros familiares que pudieran tener interés en el caso. Desde luego, de existir otros herederos, los mismos constituirían una parte indispensable, sin cuya presencia no podría adjudicarse la reclamación del Sr. Heine Rivera. Véase, Pino Development Corp. v. Registrador, 133 D.P.R. 373, 388 (1993); Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 687 (1989); Paine v. Srio. de Hacienda, 85 D.P.R. 817, 820 (1962); Danz v. Suau, 82 D.P.R. 609, 614 (1961); Cancel v. Martínez, 74 D.P.R. 108, 115 (1952); Fuentes v. Tribl. de Distrito, 73 D.P.R. 959, 987 (1952); Sucn. Belaval v. Acosta, 64 D.P.R. 109, 110-111 (1944); Viera v. Sucn. Goitía, 55 D.P.R. 299, 303 (1939).
3. Esta resolución fue notificada el 20 de agosto de 2004. Los apelados se han quejado de que, por un error de la Secretaria del Tribunal de Primera Instancia, no se les envió copia de la misma.